USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/31/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLA KISELEVA,

                      Plaintiff,

-against-

MARK GREENSPAN, ADAM LITMAN,
BEAUTYFIX ENTERPRISES LLC d/b/a
BEAUTYFIX MEDSPA, BEAUTYFIX MEDICAL
PLLC d/b/a BEAUTYFIX MEDICAL SPA,
BEAUTYFIX HOLDINGS LLC, BEAUTY FX SPA
INC., and MAYA BENAYOUN,

                      Defendants.

23-CV-9496 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiff Alla Kiseleva sued her former employers, Defendants BeautyFix Enterprises LLC d/b/a BeautyFix MedSpa, BeautyFix Medical PLLC d/b/a BeautyFix Medical Spa, BeautyFix Holdings LLC, and Beauty FX Spa Inc. (collectively, "BeautyFix" or "Employer Defendants"), as well as BeautyFix employees Mark Greenspan, Adam Litman, and Maya Benayoun (collectively, "Individual Defendants," and, with BeautyFix, "Defendants"), alleging that they discriminated against her because of her ethnicity in violation of 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. CITY ADMIN. CODE § 8-107 *et seq.* Defendants moved to dismiss Kiseleva's First Amended Complaint ("Amended Complaint" or "Am. Compl.") for failure to state a claim. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## BACKGROUND[1]

Alla Kiseleva worked as an aesthetic medical provider, otherwise known as an "injector," at BeautyFix from July 2015 through December 2021. Am. Compl., Dkt. 33 ¶¶ 10, 149. At the time, Defendants Greenspan and Benayoun were Co-Chief Executive Officers and Defendant Litman was Senior Vice President of BeautyFix. *Id.* ¶ 7. Kiseleva is "of Russian ancestry and ethnic heritage, Slav or Slavic ethnicity and race, and Slavic Eastern European Eurasian (SEE) ethnic heritage." *Id.* ¶ 5.

Throughout her employment, Defendants classified Kiseleva as an independent contractor when, in her view, she should have been classified as an employee. *See id.* ¶¶ 41, 45. Defendant Litman applied different standards for non-SEE and SEE personnel: the former were classified as employees if they worked full time and did not have another job, but the latter were nearly all classified as independent contractors even if they should have been classified as employees. *See id.* ¶¶ 47–48.[2] Kiseleva protested her misclassification to Greenspan, Litman,

---

[1] The Court presumes the truth of the well pled factual allegations in the Amended Complaint at this stage in the litigation. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019). Evaluating the sufficiency of the complaint has been made more difficult than it should be because the Amended Complaint is repetitive, *see, e.g.*, Am. Compl. ¶¶ 42, 61, 89, 104, 110–20 (discussing the stress Kiseleva experienced due to Defendants' conduct) and includes wholly irrelevant allegations, *see, e.g., id.* ¶¶ 121–25 (extolling the virtues of Plaintiff's husband and relaying his concerns about her employment situation). Plaintiff's counsel is admonished to focus on relevant facts only during this litigation.

[2] While there may not be an absolutely bright line rule to determine whether a worker should be classified as an employee or an independent contractor, the courts and the IRS generally look to the level of control exercised over the worker. In the context of the Fair Labor Standards Act, for example, courts consider "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Aquino v. Uber Techs., Inc.*, 671 F. Supp. 3d 338, 344 (S.D.N.Y. 2023) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). New York courts similarly focus on whether "the evidence demonstrates that the employer exercises control over the results produced by claimant or the means used to achieve the results" to determine whether an employer-employee relationship exists. *In re Hertz Corp.*, 2 N.Y.3d 733, 735 (2004). *See also 303 W. 42nd St. Enters., Inc. v. IRS*, 916 F. Supp. 349, 356-61 (S.D.N.Y. 1996), *rev'd on other grounds*, 181 F.3d 272 (2d Cir. 1999) (discussing twenty factors that are considered by the IRS to distinguish employees from independent contractors including, *inter alia*, hours of work, whether the worker must devote substantially full time to the putative employer's business, and where the work must be performed); 26 C.F.R. §

and other BeautyFix workers to no avail. *Id.* ¶ 41. In 2020, Kiseleva returned to work after an interruption due to the Covid-19 pandemic and signed an offer letter that indicated she would be an employee; that status would have entitled Kiseleva to "biweekly or similarly regular pay periods, pay breakdowns, withholdings, [personal time off ("PTO")], and legal protections." *Id.* ¶ 43. Despite this agreement, Kiseleva was never classified as an employee and "experienced enormous confusion and stress from the burdensome requirements of her misclassification, as well as burn out, fatigue, and stress from the complete lack of PTO." *Id.* ¶ 42. Because of Defendants' misclassification, Kiseleva was required to hire accountants and similar professionals to help her comply with her tax obligations. *Id.* ¶ 61.

Non-SEE employees enjoyed other benefits that Kiseleva never received. For instance, non-SEE employees received bonuses whereas Kiseleva, "the highest revenue generator for the company by a staggeringly large margin," never received a bonus. *Id.* ¶ 56. Other SEE personnel likewise never received bonuses. *Id.* ¶¶ 57–59. Defendants also promised Kiseleva and a non-SEE injector $6,000 in maternity pay; the non-SEE injector received $6000, but Kiseleva received only $4,000. *Id.* ¶ 64. Defendants permitted non-SEE injectors to decline to work on certain days and to refuse patient bookings; SEE injectors like Kiseleva were not permitted to do so. *Id.* ¶ 66. Defendants also granted a non-SEE employee longer breaks to express milk than they granted Kiseleva. *Id.* ¶¶ 87–88.

---

31.3121(d)-1(c)(2) (discussing IRS standards to determine whether a common law employer-employee relationship exists).

Although not a model of clarity, the Complaint alleges sufficient facts for the Court to conclude that Defendants controlled Kiseleva's employment and that she likely should have been classified as an employee. *See* Am. Compl. ¶¶ 69–75 (alleging Defendants did not permit Kiseleva to reduce her hours or patient load); ¶¶ 83–85 (alleging refusal to grant time off).

Kiseleva recounts several instances of insults or ridicule that, she claims, were motivated by discriminatory animus. Defendant Greenspan referred to Kiseleva as a "workhorse" and a "machine." *Id.* ¶¶ 22, 28. These labels upset Kiseleva, and she asked Greenspan not to refer to her that way. *Id.* ¶¶ 27–28. Defendant Litman used Russian curse words in Plaintiff's presence, made jokes using Russian swear words, "and on occasion he cursed out difficult patients in Russian in Kiseleva's presence." *Id.* ¶¶ 34–36.

Kiseleva initiated this action on October 29, 2023, seeking damages arising from Defendants' alleged violations of Section 1981, the NYSHRL, and the NYCHRL. *See* Dkt. 1. Following Defendants' motion to dismiss the Complaint for failure to state a claim, *see* Dkt. 24, Kiseleva amended her Complaint, *see* Dkt. 33. Defendants again moved to dismiss for failure to state a claim. *See* Def. Mem., Dkt. 40-5, at 1 (cover page) (citing Fed. R. Civ. P. 12(b)(6)).

## DISCUSSION

### I. Motion to Dismiss Standard

To resolve a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011)). A complaint survives a motion to dismiss for failure to state a claim upon which relief can be granted if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "In

deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" *Hu*, 927 F.3d at 88 (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

## II.     Kiseleva States a Section 1981 Claim of Disparate Treatment Against Employer Defendants (Count I)

Kiseleva asserts that the Employer Defendants discriminated against her based on her race in violation of 42 U.S.C. § 1981.  *See* Am. Compl. ¶¶ 160–66.  To state a claim pursuant to Section 1981, Kiseleva must allege "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position;[3] (3) that she suffered an adverse employment action; and, in addition, [she] has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  Kiseleva has alleged sufficient facts to state a Section 1981 claim for employment discrimination against the Employer Defendants.

### A.   Kiseleva Adequately Alleges That She Is a Member of a Protected Class

Although Section 1981 does not reference "race", the Supreme Court has construed it as forbidding racial discrimination and has defined racial discrimination covered by the statute to include discrimination based on "ancestry or ethnic characteristics." *Vill. of Freeport v. Barrella*,

---

[3]     Defendants do not contest that Kiseleva was qualified for her position.

5

814 F.3d 594, 604-05 (2d Cir. 2016) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)).

Kiseleva alleges that she belongs to several overlapping ancestries and ethnicities. She "is an individual of Russian ancestry and ethnic heritage, Slav or Slavic ethnicity and race, and Slavic Eastern European Eurasian (SEE) ethnic heritage." Am. Compl. ¶ 5. Kiseleva also references "a group of BeautyFix employee[s] of varying national origin and places of birth, most of whom spoke Russian and *all of whom were of Slav or Slavic ethnicity and race*, and who shared Slavic Eastern European Eurasian (SEE) geo-cultural and ethnic identities;" she alleges that group of employees was "systematically and purposefully discriminated against by Defendants." *Id.* ¶ 12 (emphasis added).

In deciding that Section 1981 reached discrimination on the basis of "ancestry or ethnic characteristics," the Supreme Court relied, in part, on 19th-century encyclopedias that, contemporaneous to the passage of Section 1981, "described race in terms of ethnic groups." *Saint Francis Coll.*, 481 U.S. at 611, 613. The Court cited the 1863 version of the New American Encyclopedia, which identified "several groups as constituting races," including "Russians." *Id.* at 611.[4]

The Second Circuit, relying on *Saint Francis College*, has held that, for the purposes of Section 1981, "Hispanics comprise a distinct race." *Vill. of Freeport*, 814 F.3d at 606. The Circuit reasoned that Hispanics clearly constitute an ethnic group that qualifies as a protected class under Section 1981, even though United States Government standards treat "Hispanic" "as an *ethnicity*, the members of which may belong to any race" and even though Hispanics

---

[4] Another source relied on by the Supreme Court, the Ninth edition of the Encyclopedia Britannica, likewise referred to various ethnic groups as "separate races." *Saint Francis Coll.*, 481 U.S. at 611-12. That edition of Encyclopedia Britannica refers to Slavs as the "Slavonic race" and considers Russians to be one of several sub-groups of Slavs. *See* ENCYCLOPEDIA BRITANNICA, vol. 22, p. 145, Slavs (9th ed. 1887).

6

themselves "hail from societies with quite different notions of racial identity." *Id.* at 602-05. The Circuit also noted that "someone may belong to more than one 'race' for purposes of" Section 1981. *Id.* at 605. So too here. Kiseleva alleges that she is of Russian ancestry and Slavic ethnicity. Am. Compl. ¶ 5. Although her SEE BeautyFix colleagues may identify themselves as belonging to different races, she alleges that they are all ethnically Slavs. Am. *Id.* ¶ 12. Her position is consistent with the Circuit's holding that, though ethnic Hispanics may identify themselves as belonging to different races, they are ethnically Hispanic and entitled to protection under Section 1981 as such. *Vill. of Freeport*, 814 F.3d at 602, 605.

Defendants argue that Kiseleva has failed to allege "specific or observable characteristics" that she possesses or exhibits that demonstrate she is Slavic and that, unlike other ethnic groups, "there are no generally known ways to discern whether a person is Slavic." Def. Mem. at 9. Defendants also argue that Plaintiff has not adequately alleged that they knew Plaintiff was Slavic. *Id*. They assert that her allegations that BeautyFix "allegedly knew that" Kiseleva or her "family emigrated from Eastern Europe and that she spoke Russian" does not give rise to an inference that Defendants knew she was Slavic, because "Jewish people also meet these criteria." *Id.*

There are at least two problems with Defendants' arguments. First, Defendants cite no support for their position that a plaintiff in a Section 1981 action must allege that her employers knew her race. A plaintiff need only allege that she is within a protected class, *Floyd v. New York Pub. Radio*, No. 23-CV-1096 (ALC), 2024 WL 1407058, at *4 (S.D.N.Y. Apr. 2, 2024); *Mitchell v. Planned Parenthood of Greater New York, Inc.*, No. 1:23-CV-01932 (JLR), 2024 WL 3849192, at *18 (S.D.N.Y. Aug. 16, 2024) (plaintiff "must plausibly allege" that she "is a member of a racial minority"), and that "she was subject to an adverse employment action . . . under

7

circumstances giving rise to an inference of discrimination,'" *Floyd*, 2024 WL 1407058, at *4. Second, the Court fails to understand how the fact that there are Jews who also hail from Eastern Europe and speak Russian means that Plaintiff has not adequately alleged that she is a member of a protected class.

Although the Court agrees with Defendants that Kiseleva's reference to SEE "geo-cultural and ethnic identities" paints with too broad a brush as this claimed heritage captures multiple "ethnic identities," Am. Compl. ¶ 12, Kiseleva need only allege facts showing that she is a member of a protected class, and her Russian and Slavic heritage qualify.[5]

### B. Kiseleva Adequately Alleges That She Was Subjected to Adverse Employment Actions

Kiseleva has adequately alleged that she suffered adverse employment actions. "An adverse employment action is 'a materially adverse *change* in the terms and conditions of employment.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 112 (S.D.N.Y. 2022) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). A change in working conditions is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Mathirampuzha*, 548 F.3d at 78). Although "there is no exhaustive list of what constitutes an adverse employment action," *id.* (quoting *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013)), examples "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[5] Defendants' other arguments are unavailing. The Court has no difficulty discerning whether Kiseleva is alleging racial or national origin discrimination or some combination. *See* Def. Mem. at 17–18. In *Nadesan v. Citizens Fin. Grp.*, upon which Defendants rely, the plaintiff alleged "he was treated differently from his coworkers" because he is a "Singapore National." 673 F. App'x 47, 49 (2d Cir. 2016). Because the complaint did not differentiate between the plaintiff's race, ethnicity, or ancestry and his national origin, the plaintiff failed to state a race discrimination claim. *Id.* Kiseleva's Amended Complaint makes no such reference to her national origin. Additionally, the allegations that Greenspan and Litman knew Russians, had Russian girlfriends, and hired SEE injectors do not, as Defendants claim, cut against Kiseleva's ability to state a claim under Section 1981. *See* Def. Mem. at 10–11 (citing Am. Compl. ¶¶ 16–20, 33–39).

distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities," *id.* (quoting *Mathirampuzha*, 548 F.3d at 78), as well as "denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee," *id.* (quoting *Potash*, 972 F. Supp. 2d at 584).

Kiseleva alleges a host of purportedly adverse employment actions, some of which are actionable under Section 1981.  Chiefly, she alleges that Employer Defendants misclassified her as an independent contractor rather than as an employee.  Am. Compl. ¶¶ 41–44.  Because she was misclassified, Kiseleva alleges that she did not receive "biweekly or similarly regular pay periods, pay breakdowns, withholdings, PTO, and legal protections to which an employee is entitled."  *Id.* ¶ 43.  Being misclassified as an independent contractor allegedly caused her to endure "stress, expense, and confusion" from "managing taxes" and required her to engage accountants and similar professionals to handle her tax obligations.  *Id.* ¶ 61.  Other allegations of adverse employment actions include failing to pay her promised bonuses and maternity pay; prohibiting her from choosing days off or refusing patients; denying her "marketing and PR resources, as well as recognition;" and enforcing a non-compete agreement against her.  *Id.* ¶¶ 56, 64, 66, 81, 105–06, 146–47.

Employer Defendants' misclassification of Kiseleva as an independent contractor, failure to pay her promised bonuses and maternity pay, and requirement that she work on Saturdays, as alleged, qualify as adverse employment actions.  An alleged adverse employment action must be material; materiality includes, although is not limited to, actions that carry financial burdens.  *See, e.g.*, *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 320-21 (S.D.N.Y. 2024)

(finding a negative performance review constituted an adverse employment action because it prohibited plaintiff from receiving a bonus, but a reduction in responsibilities without a corresponding demotion or reduction in pay did not).  Here, Kiseleva alleges that Employer Defendants' misclassification deprived her of "biweekly or similarly regular pay periods, pay breakdowns, withholdings, PTO, and legal protections" and required her to "engag[e] accountants and similar professionals" to help her manage her taxes.  Am. Compl. ¶¶ 43, 61.  Denying Kiseleva the benefits that come from being an "employee" constitutes the sort of adverse employment action long recognized by courts in this Circuit.  *See Alvarado*, 631 F. Supp. 3d at 112 (listing examples).

As to the failure to pay Kiseleva her promised bonus, Am. Compl. ¶ 56, the Second Circuit has held that the receipt of a smaller bonus than other employees can qualify as an adverse employment action, even when the decision to award bonuses is discretionary.  *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 236 (2d Cir. 2015).  Following *Davis*, several courts in the Southern District in similar contexts have found that the refusal to pay a bonus or to award other discretionary increases in pay may constitute an adverse employment action.  *See Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397, 409-10 (S.D.N.Y. 2023) (denial of fixed percentage bonus agreement); *Bell v. SL Green Realty Corp.*, No. 19 CIV. 8153 (LGS), 2021 WL 516575, at *5 (S.D.N.Y. Feb. 11, 2021) (Hispanic employees denied bonuses whereas non-Hispanic employees received them); *Stryker v. HSBC Sec. (USA)*, No. 16-CV-9424 (JGK), 2020 WL 5127461, at *8 (S.D.N.Y. Aug. 31, 2020) (refusal to increase compensation).  Although the Court has found no cases addressing whether providing less maternity pay constitutes an adverse employment action, the same reasoning that applies to the denial of a discretionary bonus applies with equal force to maternity pay because "[u]ndercompensating . . . a person for a

discriminatory reason is as adverse as affirmatively reducing the compensation of a person below his or her worth for a discriminatory reason." *Miller*, 695 F. Supp. 3d at 410.

Kiseleva's allegations regarding compulsory Saturday shifts for SEE personnel present a closer question; the Court finds she has alleged sufficient facts supporting her assertion that this requirement was an adverse employment action. At some point in time, Defendants required all personnel to work on Saturday. Am. Compl. ¶ 79. Kiseleva alleges that she was required to work every Saturday even prior to the announcement of this policy. *Id.* ¶ 80. Although Defendants permitted non-SEE personnel to opt out of this requirement, Kiseleva was forced to work every Saturday. *Id.* ¶¶ 80–81. The law is not so limited as to require Kiseleva to allege pecuniary loss to support her claim that she suffered an adverse employment action; rather, "shift assignments that make a normal life difficult for the employee" can qualify. *Potash*, 972 F. Supp. 2d at 584. Requiring Kiseleva to work every Saturday and refusing to allow her to opt out of this schedule contributed to difficulties in her life, including several trips to her physician and the emergency room due the work-related anxiety she felt. *See* Am. Compl. ¶¶ 111–19.

Defendants' argument that Kiseleva failed to allege how her misclassification as an independent contractor harmed her, *see* Def. Mem. at 4, is misplaced. Kiseleva alleged that the misclassification denied her PTO benefits, legal protections, and withholdings, *see* Am. Compl. ¶ 43. Defendants quarrel with Plaintiff, asserting that her classification as an independent contractor may have yielded tax benefits and greater "take-home pay," among other advantages, and assert that Kiseleva could have submitted paperwork to the IRS to avoid their classification of her as an independent contractor. *See* Def. Mem. at 4–5. The Court cannot resolve factual disputes on a motion to dismiss; the Court "may consider 'only the facts alleged in the pleadings.'" *Hu*, 927 F.3d at 88 (quoting *Samuels*, 992 F.2d at 15).

11

"[C]hanges in assignments or responsibilities that do not radically change the nature of work are not typically adverse employment actions." *Alvarado*, 631 F. Supp. 3d at 113 (quoting *Potash*, 972 F. Supp. 2d at 584). Adverse employment actions must be "more than trivial, insubstantial, or petty," *id.* (quoting *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013)). The allegations that Employer Defendants prohibited Kiseleva from refusing patients and denied her "marketing and PR resources, as well as recognition" at best constitute "mere inconvenience," appear to have barely "alter[ed]" Kiseleva's "job responsibilities," and do not qualify as adverse employment actions. *Tieu*, 717 F. Supp. 3d at 321 (quoting *Davis*, 804 F.3d at 235). Likewise, the enforcement of a non-compete agreement that Kiseleva breached is akin to an employer's enforcement of "preexisting disciplinary policies in a reasonable manner," and also does not qualify as an adverse employment action. *Alvarado*, 631 F. Supp. 3d at 112 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)).

### C. Kiseleva Has Adequately Alleged That the Adverse Employment Actions Occurred under Circumstances Giving Rise to an Inference of Discrimination

Kiseleva has adequately alleged that the misclassification of her as an independent contractor, the discrepancies in maternity pay, and the refusal to allow her opt out of working on Saturdays occurred under circumstances giving rise to an inference of discrimination; she has not adequately raised an inference of discrimination as to Defendants' refusal to pay her a bonus.

"An inference of discrimination can arise from . . . the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. To adequately allege a Section 1981 claim premised on disparate treatment, "a plaintiff must allege at least one instance in which he was treated differently from a similarly situated non-minority." *Hu*, 927 F.3d at 101. Although "the plaintiff's and comparator's circumstances must bear a reasonably close

12

resemblance," they need not be "identical." *Id*. at 96 (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). A plaintiff adequately alleges disparate treatment if she alleges facts from which the Court can plausibly infer that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id*. (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

Kiseleva alleges that non-SEE[6] employees, including four to six non-SEE injectors, were classified as employees if they worked full-time and did not have other employment. Am. Compl. ¶¶ 47–50, 54. She, however, was classified as an independent contractor even though she should have been classified as an employee and even though Defendants offered her a position as an employee. *Id.* ¶¶ 41, 50. At this stage, the only material consideration is whether Kiseleva has adequately alleged that she was treated differently from at least one comparator. *See Hu*, 927 F.3d at 96, 101. Kiseleva has met that burden. Similarly, Kiseleva has also alleged sufficient facts to raise an inference of discrimination as to maternity pay. According to the Amended Complaint, Kiseleva and a non-SEE injector were both promised $6,000 in maternity pay; Plaintiff received $4,000 and the comparator injector received $6000. Am. Compl. ¶ 64.[7] Likewise, non-SEE personnel, including one person who worked Saturdays at another facility, could choose not to work on Saturday, whereas Kiseleva and other SEE personnel could not opt out of this company-wide requirement. *Id.* ¶¶ 79, 81–83. Because this requirement allegedly applied to all personnel, Kiseleva has met her burden by identifying at least one instance in which a non-SEE employee was treated differently, regardless of that employee's position.

---

[6]   The Court infers that those to whom Plaintiff refers as "non-SEE" are neither Slavic nor Russian, as it must draw all reasonable inferences in favor of the non-moving party.

[7]   Defendants speculate that Kiseleva "may have elected to take a shorter leave so that she could remain longer at work or return sooner to work." Def. Mem. at 7. The Court cannot consider Defendants' speculation about facts on a motion to dismiss.

Kiseleva does not, however, sufficiently allege facts raising an inference of discrimination as to Defendants' failure to pay her a bonus. *See Hu,* 927 F.3d at 96; Am. Compl. ¶ 56. She has alleged only that non-SEE employees, not non-SEE injectors, received bonuses, and has failed to allege that any injectors were entitled to or received bonuses. *See* Am. Compl. ¶ 56. Because Plaintiff is not similar in all material respects to the individuals to whom she compares herself, the Court cannot infer discriminatory intent.

In sum, Kiseleva's Section 1981 claim against Employer Defendants may proceed insofar as she has sufficiently alleged facts showing that her misclassification as an independent contractor, the requirement to work Saturdays, and the discrepancy in maternity pay occurred under circumstances giving rise to an inference of discrimination.

### III. Kiseleva Has Adequately Alleged Discrimination Claims Against Employer Defendants Under the NYSHRL and NYCHRL (Counts III, IV)

Because "[t]he pleading standards are generally the same for . . . section 1981[ ] and NYSHRL claims," *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2020 WL 6274826, at *16 (S.D.N.Y. Oct. 24, 2020), Kiseleva has stated a discrimination claim against Employer Defendants under the NYSHRL for the reasons discussed above, *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam).[8] Under the NYCHRL, a plaintiff need only allege that she was "treated 'less well'. . . because of a discriminatory intent,"

---

[8] "Under section 1981, 'a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right,'" *Cardwell*, 2020 WL 6274826, at *16 n.10 (quoting *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020)), but under "the NYSHRL, a plaintiff need only allege that her protected characteristic was a 'motivating factor in the employment decision,'" *id.* (quoting *Vega*, 801 F.3d at 87). This distinction is immaterial to the analysis of Kiseleva's disparate treatment claims at the motion to dismiss stage. Kiseleva's pleading burden is "minimal." *Stryker*, 2020 WL 5127461, at *7 (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012)). To plead but-for causation, Kiseleva need only allege "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination," *Vega*, 801 F.3d at 87, and the Court's determination that her misclassification, reduced maternity pay, and forced Saturday work occurred under circumstances giving rise to a plausible inference of discrimination satisfy that standard.

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013), a lesser burden that exists for either Section 1981 or NYSHRL.  *See Richards v. N.Y.C. Dep't of Educ.*, No. 21-CV-338, 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022).  Accordingly, Kiseleva's NYCHRL claims likewise survive.

### IV.     Kiseleva Has Failed to State a Claim for Hostile Work Environment Under Section 1981 (Counts II, VI, X)

A plaintiff alleging a hostile work environment "must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  Not only must "the conduct complained of . . . be severe or pervasive enough that a reasonable person would find it hostile or abusive," but the victim must also "subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  Courts "consider the totality of the circumstances" to determine "whether a plaintiff suffered a hostile work environment, . . . including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id*. at 321 (quoting *Harris,* 510 U.S. at 21).  Kiseleva's factual allegations fail to give rise to a plausible inference that the conditions of her employment were severe or pervasive enough to state a claim for hostile work environment.

Kiseleva alleges that Defendant Greenspan referred to her as a "workhorse" and "machine" despite her protestations that she found these labels upsetting.  Am. Compl. ¶¶ 22–23. Kiseleva also alleges that Defendant Litman approached her and two other BeautyFix employees while they were speaking Russian and began cursing in Russian.  *Id.* ¶ 34.  He said he knew

those words because "he dated and had Russian girlfriends." *Id.* ¶ 35. Litman allegedly made jokes using Russian swear words and occasionally cursed out difficult patients in Russian in Kiseleva's presence. *Id.* ¶ 36.

The Court can infer from the Amended Complaint that BeautyFix was not a pleasant work environment. But the law does not impose a "general civility code" on workplaces. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 602 (S.D.N.Y. 2011) (quoting *Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004)). Unprofessional and rude conduct is not sufficient to state a claim for hostile work environment. *Littlejohn,* 795 F.3d at 320-21 (2d Cir. 2015) (citing *Harris,* 510 U.S. at 21). In short, Kiseleva has failed to state a claim for hostile work environment against any Defendant because the Court cannot infer from the facts alleged that a reasonable person would find the workplace to be hostile or abusive.

**V.     Kiseleva Has Stated Claims Under Section 1981, the NYSHRL, and the NYCHRL Against Greenspan and Litman Individually (Counts V, VII, VIII, IX, XI, XII, XIII, XIV)**

Having determined that Kiseleva has stated a claim for discrimination against Employer Defendants, the Court considers whether the Amended Complaint alleges sufficient facts to state a claim against Defendants Greenspan, Litman, and Benayoun individually. Kiseleva asserts that the Individual Defendants are liable under Section 1981, the NYSHRL, and the NYCHRL. *See* Am. Compl. ¶¶ 184–89, 195–212, 218–237.

To state a claim for individual liability under Section 1981, a plaintiff must allege facts tending to show "some affirmative link to causally connect the actor with the discriminatory action" and tending to show that the individual was personally involved in the discrimination. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). Such involvement can be

16

shown by alleging facts, *inter alia*, that show direct participation in the alleged violation, failure to take remedial action upon being informed of the violation, and gross negligence in supervising subordinates who committed the violation. *See id.*; *Littlejohn*, 795 F.3d at 314. Simply alleging that an individual "held a high position of authority" is insufficient to state a claim. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

Kiseleva has alleged sufficient facts showing the direct participation of Litman in her misclassification as an independent contractor and Greenspan's failure to take remedial action regarding this misconduct.[9] Kiseleva alleges that Greenspan and Litman had authority to set and pay wages and that they "control[led] every and all other terms and conditions of" her employment. Am. Compl. ¶ 8. Litman allegedly determined whether a worker was classified as an employee or an independent contractor. *Id.* ¶¶ 40, 47–48. From October 2017 through the termination of her employment, Litman ignored Kiseleva's pleas to correct her classification. *Id.* ¶ 42. Kiseleva asked both Greenspan and Litman to correct the misclassification via text messages, orally, and by email. *Id.* ¶ 41.

By contrast, the Amended Complaint makes no factual allegations regarding Benayoun's conduct in connection with the discriminatory treatment alleged by Kiseleva. The allegation that Benayoun, like Greenspan and Litman, had supervisory authority over Kiseleva, *Id.* ¶ 8, is not sufficient to state a claim pursuant to Section 1981 against her individually. *See Back*, 365 F.3d at 127.

---

[9] The Amended Complaint does not allege any Individual Defendants' involvement in the decision to provide Kiseleva less maternity pay than a non-SEE injector or the refusal to allow her to opt out of the Saturday shift requirement.

17

The NYSHRL imposes liability for discrimination against employers but not employees, "regardless of the employee's position or relationship to the employer." *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 458 (N.Y. 2021). An employee may be held liable under the NYSHRL only under an aiding and abetting theory, which the Second Circuit has construed "to allow for liability where a co-worker 'actually participates in the conduct giving rise to the discrimination claim.'" *Lee v. Riverbay Corp.*, No. 22-CV-7504-LTS, 2024 WL 4312166, at *15 (S.D.N.Y. Sept. 27, 2024) (quoting *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004)). Plaintiff has adequately alleged that Litman and Greenspan are individually liable under the NYSHRL because they either participated in the misclassification or failed to take remedial action to rectify the issue once notified. *Lee*, 2024 WL 4312166, at *16. Because no such allegations are made about Benayoun, Plaintiff has not stated a NYSHRL claim against Benayoun individually.

For the same reasons, Plaintiff has stated a claim against Litman and Greenspan but not Benayoun under the NYCHRL. *See Nezaj v. PS450 Bar & Rest.*, No. 22 CIV. 8494 (PAE), 2024 WL 815996, at *7 (S.D.N.Y. Feb. 27, 2024) (holding "an individual defendant, although not qualifying as an employer, may be held liable for discrimination [under the NYCHRL] either (1) directly, for his own participation in discrimination, or (2) for aiding and abetting other liable persons").

## VI. Kiseleva is Granted Leave to Amend

The Court grants Kiseleva leave to file a second Amended Complaint. Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This is especially so where, as here, the Court has not previously weighed in on "the precise defects" of the pleading. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 191 (2d Cir. 2015). Defendants argue that because Kiseleva has already amended her complaint, and did so

18

minimally, further amendments would be futile. Def. Reply Mem., Dkt. 42, at 9–10. Although the Court is not entirely convinced that Plaintiff will be able to adequately allege the claims that are being dismissed, it will permit her to try. Defendants are free to move to dismiss those repleaded claims if Kiseleva opts to amend.[10]

## CONCLUSION

The Court has reviewed Defendants' remaining arguments and finds them without merit.[11] For the foregoing reasons, Defendants' motion to dismiss is DENIED in part and GRANTED in part. Kiseleva's Section 1981, NYSHRL, and NYCHRL claims premised on disparate treatment against Employer Defendants, Greenspan, and Litman may proceed (Counts I, III, IV, V, VII, VIII, IX, XI, and XII in full, and Counts XIII and XIV, in part). Kiseleva's hostile work environment claims against all Defendants are dismissed (Counts II, VI, and X). Kiseleva's claims against Benayoun are likewise dismissed (Counts XIII and XIV, in part). The Clerk of Court is respectfully directed to terminate Dkt. 40.

---

[10] Pursuant to Rule 4.E of the Undersigned's Individual Practices in Civil Cases, if Plaintiff amends her complaint, she must file both a clean copy *and* a redlined copy of the Second Amended Complaint.

[11] Defendants argue that Kiseleva's state law claims are time-barred, Def. Mem. at 23–25, but Kiseleva alleges that the misclassification – and hence the discrimination – continued throughout her employment, which ended in late as December 2021, Am. Compl. ¶ 149. Her Complaint was filed on October 29, 2023, well within the three-year statute of limitations applicable to NYSHRL and NYCHRL claims. *See Akhtar v. Saudia*, No. 19 CV 03763-LTS-DCF, 2021 WL 1758807, at *9 (S.D.N.Y. May 4, 2021). Accordingly, at the pleading stage the claims do not appear to be time barred.

The Court likewise declines Defendants' invitation to apply the case-splitting doctrine "as a matter of judicial discretion" because of a similar ongoing action in state court. Def. Reply Mem. at 7; *see also* Def. Mem. at 21–23. The case-splitting doctrine arose "to avoid duplicative litigation" among "federal district courts." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). But, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). This is because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.*

IT IS FURTHER ORDERED that Kiseleva may amend her complaint to address only the claims that have been dismissed and must do so not later than **November 14, 2024**.

**SO ORDERED.**

Date: October 31, 2024
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**