UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ALLA KISELEVA,<br><br>       Plaintiff,<br><br>– against –<br><br>MARK GREENSPAN, ADAM LITMAN,<br>BEAUTYFIX ENTERPRISES LLC,<br>BEAUTYFIX MEDICAL PLLC,<br>BEAUTYFIX HOLDINGS LLC,<br>BEAUTY FX SPA INC,<br>and MAYA BENAYOUN,<br><br>       Defendants. | **REPLY AFFIRMATION OF COUNSEL IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO RECOVER THEIR COSTS INCLUDING COUNSEL FEES**<br><br>Case No. 1:23-cv-09496 (VEC) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

   Leonard N. Flamm, an Attorney of New York and duly admitted to practice before this Court, hereby affirms as follows under the penalties of perjury:

1. I am co-counsel for the Beauty Fix Defendants herein (collectively "BFX"), am familiar with all the facts and circumstances herein, and I respectfully submit this Reply Affirmation in response to the Memorandum of Law heretofore submitted by Plaintiff, Alla Kiseleva ("AK"), and in further support of Defendants' Motion to Recover Their Costs pursuant to FRCP 54 (d) (2) and 42 USC Section 1988 (b).

2. As explained in the Defendant's Memorandum of Law, dated and filed June 2, 2025, and pursuant FRCP 54 (d) (2) (C), BFX seeks, in this first phase of its Motion, for the Court to determine the extent of the liability of AK herein for the payment of BFX's costs including attorneys' fees by identifying, *inter alia*, which of AK's numerous claims asserted in this case, if not all, were frivolous and lacking in foundation so as to warrant an award of counsel fees to BFX for successfully defending against them.

1

3. The second phase of this Motion, to be filed, if at all, only after a decision by the Court is rendered on this first phase, will seek for the Court to determine the fair and reasonable value of the legal services rendered by counsel for BFX which are allocable to its successfully defending against those claims of AK found by this Court to have been frivolous and lacking in foundation.

4. In this Reply Affirmation, your affiant addresses the unexcused lateness of AK's Memorandum of Law, submitted on June 21, 2025, in opposition to BFX's motion. Your affiant respectfully requests that this Court find that such opposition papers to be untimely filed, the result of non-excusable neglect, to treat AK as being in default in responding to BFX's motion and thereby to determine that BFX's motion has been unopposed. These requested findings may not be discretionary; they seem virtually mandated under the circumstances in accordance with FRCP 6 (b) (1). Although the Court has wide discretion in excusing late filings, the facts and circumstances of AK's instant filing utterly fail to qualify as excusable neglect.

5. Even if the Court were however to find that AK's opposition papers to be the product of excusable neglect, BFX will show in its Reply Memorandum that AK's papers are nonetheless wholly lacking in content. No attempt is made therein to address let alone specifically defend even a single claim which was set forth in her Second Amended Complaint (ECF 66) and/or in prior versions. Accordingly, BFX motion for costs including counsel fees should be granted, not only on the grounds that AK's opposition papers are inexcusably late, but also because, on the merits, they are deficient in raising any valid defenses in opposition to BFX's motion.

Procedural History and Background

6. On June 2, 2025, BFX e-filed its motion (ECF 107) to recover its counsel fees for having

successfully defended against each and every one of the claims asserted by AK against it in her Second Amended Complaint (ECF 66) and/or in earlier versions. In each pleading iteration, AK alleged that she had experienced an extensive but random assortment of disparate and adverse work conditions, all presumably based on here race and ethnic origin in violation of 42 USC Section 1981. According to AK, these adverse and disparate work conditions, which had been imposed on her against her will by BFX, her former employer, were caused by her being Slavic and/or of or from a Russian or Eastern Europe heritage, ethnic ancestry and/or national origin.

7. Over the course of several months, two motions to dismiss and one for summary judgment were serially made by BFX; together they resulted in all of AK's various claims being dismissed on the merits and with prejudice.

8. This instant motion, filed by BFX as the prevailing party on these prior successful motions, seeks to recover its costs by, *inter alia*, setting forth in detail how each one of AK's previously dismissed claims as brought was not only frivolous from the outset but, after extensive discovery, such claims only became weaker. BFX's motion thus showed that AK's claims lacked factual support, raised no inference of racial bias, were devoid of substance, non-credible and should never have been brought in the first place. AK herself knew this situation to be true better than anyone at BFX yet, even after discovery failed to bear out her claims, she did not take any steps to withdraw or discontinue them.

9. Although AK's opposition papers to BFX's motion for costs were due on June 16, 2025, nothing was filed by her on that date. On June 18, 2024, the Court *sua sponte* thereupon e-mailed all counsel herein a notice directing that, by the close of business on June 18, 2025, AK file opposition papers to BFX's motion or furnish reasons for her not doing so. ("Notice of Overdue

Filing"). This Notice from the Court did not bestir AK to act: Nothing was in fact filed by AK by the end of the day on June 18 relative to BFX's motion. At this point, by reason of her failure to file or even explain her non-filing, AK thereupon became in default with respect to opposing BFX's motion.

The Proffered Reasons for the Inaction and Lateness by AK's Counsel Lack Credibility

10. Nothing about AK's default status changed when, on June 18, 2025, she proceeded to file a Notice of Appeal (ECF 108) as to the Court's Order and Judgment, dated May 19, 2025. (ECF 105-106). This filing was not itself responsive to BFX's motion nor was it intended to be: In a letter and email to the Court dated June 20, 2025, AK's counsel stated:

> "When I filed said notice of appeal on behalf of the plaintiff, who will
>   be retaining separate appellate counsel, I became aware of my
>   oversight at that time."

11. This assertion by AK's counsel, as to her having learned of the pendency of BFX's motion on June 18, underscores her lateness: Even after her lack of attention to her emails for over two weeks, counsel for AK exercised an additional lack of diligence.

12. If counsel for AK truly learned of BFX's motion on June 18, 2025, as she claims, she is hard put to explain why she then waited to send her letter and email to Chambers until June 20, two days later, and/or why she waited even longer, until June 21, to actually file her opposition papers.

13. Once counsel for AK learned on June 18 that BFX had filed a motion for costs over two weeks earlier, she should have hastened to file her opposition papers forthwith. Nothing prevented her from doing so: Counsel for AK was not hospitalized, she has supplied no medical substantiation of any injury or physical or mental illness, she has not specified how any

4

unspecified illness or her preoccupation with shutting down her law office prevented her from reading her emails; she has also not identified any debilitating or distracting mental state, computer or internet malfunction or any personal, family or professional problem.

14. In her letter and email to the Court, AK's counsel belatedly tried to explain that her initial and continuing failures to file opposition papers to BFX's motion were attributable to an ill-timed mixture of an unidentified personal health issue and to being distracted by a desire to shut down her law offices as soon as possible and move out of the country.

15. This contrivance, even if it may have traces of truth, does not actually explain why counsel for AK did not even monitor her emails from ECF or the Court for over 16 days:

16. Whatever may have engulfed her attention in this time frame, it seems to boil down to the simple fact that, despite her supposed numerous distractions, counsel for AK never read, at least thoroughly, her emails from June 2 through June 18.  This may be a huge fish tale for the Court to swallow.

17. In order to get around the troubling facts that (1) the ECF for the SDNY sent AK's counsel an e-mail alert as to a filing having been made on June 2, 2025, simultaneously with the actual filing itself of BFX's motion for costs on that same day, and (2) Chambers sent by email its own Notice to AK's counsel on June 18, 2025, counsel for AK needed to come up with a better excuse for her inaction than claiming unspecified health issues and moving distractions:

18. In her same letter and email Chambers sent on June 20, counsel for AK thus suggested that her failure to see or respond to the respective emails from ECF and the Court was due not to simple oversight (as might be presumed), to unspecified health factors or to focusing her attention on moving out, but rather was due to her premature but self-imposed discontinuance, shutdown and lack of access to certain computer software, internet tech or programs.

19. Counsel for AK thus stated in her email and letter to Chambers:

> "…in addition to discontinuing use of office space and so on, I eliminated software and tech which would have alerted me to filings made during my illness, ECF emails/notifications, and created new calendar events."

20. This excuse is difficult to comprehend. Since when does receiving and reading ordinary emails require certain "software and tech"? Alerts are not generated by the Court only to recipients with high-tech apps; alerts take the form of simple garden variety emails sent from the Court to any attorney registered for and appearing in a given case. No special subscription software or technology is needed to receive and read court-sent emails. An attorney of course needs to be registered for a given case to receive emails but Counsel for AK has been so registered for this case since its inception in October 2023.

21. Attorneys normally check their business account at least once a day for emails. Even if counsel for AK was not feeling well or was preoccupied with moving on June 2, the day that BFX's motion was filed, these distracting circumstances hardly prevented her from periodically checking on <u>another day</u> over the next ensuing 16 days to see what emails had been sent to her. It is far-fetched for counsel for AK to claim that, from June 2 to June 18, the day on which she filed the Notice of Appeal and apparently noticed the filing of the BFX motion, she never checked her emails

22. Counsel for AK has been constrained to put forth this dubious contention about why she could not or did not read her emails in an attempt to get around the well-accepted principle that multiple failures by an attorney to read his or her emails, as here and without more, do not constitute excusable neglect. Counsel for AK thus has offered a roundabout but less than persuasive variant explanation for her inactions. But this variant raises simple questions:

23. If AK shut down or eliminated certain of her "software and tech" services in or before early June, how was she able or intending to access the ECF for the SDNY to file her notice of appeal on June 18, 2025?

24. Moreover, if counsel for AK, by her own acts, intentionally shut down her software or email access, how can she claim that she acted inadvertently?

25. On the basis of the facts presented, and the case law discussed in BFX's Reply Memorandum, this Court should reject out-of-hand as non-credible and not excusable, AK's proffered reason for her late reading of her emails and hence her late filing of her opposition papers.

26. Based on the fact that AK's opposition papers herein were not filed until June 21, five days after her said papers were due to be filed, and no excusable neglect for said late filing having been shown by AK, her opposition papers should be rejected by the Court.

WHEREFORE, the Court should deem phase one of BFX's motion as unopposed and to enter a default as to same. Furthermore, for the reasons discussed herein, and in your affiant's prior Affirmation, as well in in Defendants' initial and reply Memoranda of Law, phase one of BFX's Motion should be granted. The Court should thus find that all of the various claims asserted in AK's suit against BFX were frivolous and/or lacking in foundation and, to that extent, deem BFX entitled to recover its counsel fees for its successful defense of such claims.

Dated:  June 28, 2025
      Montclair, NJ

s/ Leonard N. Flamm
_____
Leonard N. Flamm